Drake; Ch. J.,
delivered the opinion of the court:
These cases are all claims preferred under the Abandoned and Captured Property Act; and all of them were referred to B. Eveleth, as commissioner of the court, for investigation and report, who reported in favor of each claimant.
In each case so referred, if, upon consideration of' the commissioner’s report, in connection with the evidence, the court considered the claimant entitled to recover, he was required, before entry of judgment in his favor, to pay the commissioner such sum as the court allowed as compensation for his services.
*164 In these six cases tbe court fixed the commissioner’s gross-compensation at $1,246.09, and each of the six claimants was required to pay his proportional part of that sum, according to the amount for which the court authorized judgment in his favor.
The required payment was made on behalf of each of these claimants, by his attorneys of record, and judgment was thereupon entered in favor of each claimant for the amount found due him.
From each of those judgments the defendants appealed.
Pending the appeals, the defendants filed in each case a motion for a new trial, under section 1088 of the Iievised Statutes.
Affidavits in support of the motions have been filed, which so far tend to prove fraud, wrong, or injustice done to the United States by the rendition of the judgments, that the claimants consent to a new trial, on condition that the defendants repay to the attorneys of record of the claimants the amount paid by them in the respective cases as the commissioner’s compensation ; and the claimants move the court to require that payment as a condition precedent to granting a new trial.
The fact that the money paid to the commissioner was advanced by the claimants’ attorneys, who, if not reimbursed in the way sought by this motion, may not be reimbursed at all, inclines us to look as favorably as we properly can upon the motions. Nevertheless, we may not shut our eyes to the difficulties in the way of allowing them.
In the first place, let us indicate the position of this court in regard to new trials. For this we are to look only to the statutory provisions under which the court exists and acts. Those regulating new trials are found wholly in sections 1087 and 1088 of the Iievised Statutes, as follows:
“Sec. 1087. When judgment is rendered againstany claimant, the court may grant a new trial for any reason which, by the rules of common law or chancery in suits between individuals, would furnish sufficient ground for granting a new trial.
“ Sec. 1088. The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumula *165 tive or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States; but until an order is made staying the payment of a judgment, the same shall be payable and paid as now provided bylaw.”
Of course the former of these sections has no application to the present matter, and it is presented in this connection merely to show the whole statutory law on the subject of this court’s power to grant new trials. It is with section 10S8 that we have now to do. If under it we can sustain these motions, we will cheerfully do it.
The first thing to be noted is the difference between the regulation laid down for new trials to claimants and that for new trials to the defendants. The former refers to “therules of the common law or chancery in suits between individuals,” and says that we may grant a new trial “ for any reason” which, by those rules, “would furnish sufficient ground for granting a new trial” ; while the latter makes no reference to those rules, but prescribes its own order on the subject,* and by that alone our action herein must be governed.
Under it, what is to be done on the part of the government to obtain a new trial? Simply to satisfy the court, upon ‘evidence, that some fraud, wrong, or injustice in the premises has been done to the United States; and, contrary to the rules of common law and chancery, the evidence may be cumulative. And we have held that the evidence need not be of that formal description which wonld be required at the trial, but may be of the kind and character usually admitted by courts on the hearing of motions for new trial, and that no more evidence is needed than will suffice to make out a prima facie case of fraud, wrong, or injustice. (Tait’s Case, 5 C. Cls. R., 638; Ayers’s Case, ib., 712.)
In the present cases we need not examine whether the evidence presented by the defendants to sustain the motion is sufficient to make out a prima facie case under the statute, for the counsel of the claimants frankly admits that it is, since he is denied by our practice the privilege of presenting counter-affidavits ; and the only point he makes is that the defendants ■ought to be required, as a condition of granting a new trial, to pay the sum which the attorneys of the claimants paid for the .services of the commissioner; and this raises the question whether the court has the power to impose such a condition.
*166 In considering this point, we must keep in view the. important fact that, while the law vests us in regard to new trials for claimants with all the discretion of common law courts in actions between individuals, it is not so in the case of a new trial for the government. The duty is laid upon us, whenever a prima facie case of fraud, wrong, or injustice to the United States is made out, to order a new trial. True, the language of the statute is that we “may grant a new trial” in that case; but, in our opinion, “ may” there means “ shall. ” Where a statute directs the doing of a thing for the sake of justice or the public good, the word may is the same as the word shall (Rex v. Barlow, 2 Salk. 609); and when a statute confers authority to do a judicial act in a prescribed case, it is imperative on the court to exercise the authority when the case arises. There the word may is used, not to give a discretion, but to confer a power upon the court; and the exercise of the power depends not upon the discretion of the court, but upon proof of the particular case out of which such power arises. (MacDougall v. Paterson, 11 C. B., 755.) We are, therefore, constrained to hold that the language of the section in question imposes upon us the clear duty of ordering a new trial in favor of the government whenever a prima facie case is made out which comes within the terms of that section.
Such being the mandate of the statute, have we any authority to annex conditions to the order granting a new trial in favor of the government 1 It seems to us that we have not. When a power is given to a court by statute, to be exercised when a given case is presented, it must be exercised just as the statute provides. The court has no authority to do more or less than that, unless there be some other statute giving it a discretion j and in this case there is none such. We have, then, simply to grant the new trial without any condition imposed on the government. Any other view of the matter would leave it in the power of the court, in effect, to deprive the United States of the benefit of their own law, and open the way for the consummation of the very wrong and injustice, if not fraud, which that law intended to prevent.
But were there any power in the court to attach any condition to the granting of a new trial in such cases as these, the condition now asked is probably the last one that we could be justi *167 fied in imposing. To require the government to pay what the claimants’ attorneys paid to the commissioner is to award costs against the United States; for costs, in legal acceptation, are expenses incurred by a party in conducting a suit. (Bonvier’s Law Dictionary, title Costs.)
Nothing is better settled than that no court has power, except by statute, to award costs in any case. It is- equally certain that no statute exists authorizing any court, under any circumstances, to award costs against the United States. Hence, in United States v. Barker (2 Wheat., 395) Chief-Justice Marshall, on a motion for costs against the government, simply said: 11 The United States never pay costs ”; and the Supreme Court of the United States has several times since repeated that ruling. In The Antelope (12 Wheat., 546) that court said: “It is a general rule that no court can make a direct judgment or decree against the United States for costs and expenses in a suit to which the United States is party, either on behalf of any suitor or any officer of the government.” And to the same effect are United States v. McLemore (4 How., 286) and United States v. Boyd (5 How., 29).
Whatever, then, might be our opinion as to the justice or equity of requiring the money paid to the commissioner in these cases to be repaid by the government, and however great might be our desire to save the claimants’ attorneys, as officers of this court, from a possible loss, not produced by any wrong on their part, but resulting from a proper desire to forward the interests of their clients, we are not only without legal authority to impose the condition asked for, but are, in effect, forbidden by the decisions of the Supreme Court to do so. If there is any relief in the premises, it must be obtained from the legislative department of the government. That relief we would be pleased to see afforded.
The motion of the claimant in each case is overruled.